IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: C. R. BARD, INC.,
 PELVIC REPAIR SYSTEM                                      MDL NO. 2187
 PRODUCTS LIABILITY LITIGATION

---

THIS DOCUMENT RELATES TO:

Edwards v. C. R. Bard, Inc.                    Civil Action No. 2:14-cv-27463

# MEMORANDUM OPINION AND ORDER

## I. Introduction

Pending before the court is the defendant, C.R. Bard, Inc.'s, Motion to Strike and Request for Emergency Hearing. [ECF No. 35]. In this motion, the defendant asks the court to: (1) strike Dr. Ostergard's supplemental reports, (2) hold Dr. Ostergard's deposition in abeyance, and (3) hold an emergency hearing on the matter. [ECF No. 35]. The plaintiffs filed a Consolidated Response, [ECF No. 37] and the defendants filed a Reply. [ECF No. 38]. For the reasons detailed below, the defendant's motion is **DENIED**.

## II. Background

The defendant filed identical motions in 14 individual cases in this MDL. All plaintiffs at issue are in Wave 4 and Wave 5. Pursuant to Pretrial Order # 236, Wave 4 plaintiffs were required to disclose their experts by May 12, 2017. Pursuant to Pretrial Order # 244, Wave 5 plaintiffs were required to disclose their experts by June 12, 2017. The plaintiffs disclosed urogynecologist Donald Ostergard, M.D., as

both a general causation expert and as a case-specific expert before the dates required. They also timely served Dr. Ostergard's reports disclosing his opinions and the bases thereof. Dr. Ostergard's deposition was originally scheduled to occur from July 26-28, 2017. The deposition was rescheduled for Aug. 29-31, 2017, and then later re-scheduled again for August 29-31, 2017 to accommodate a health issue Dr. Ostergard was experiencing.

On Thursday, August 24, 2017, five days before Dr. Ostergard's deposition was scheduled to take place, plaintiffs' counsel informed defense counsel that Dr. Ostergard was preparing a supplemental report which would be sent over later in the day. A few hours later, plaintiffs' counsel served fourteen supplemental reports to defense counsel. The supplemental reports were substantially similar to the original reports served, but had additional information including: (1) new depositions that Dr. Ostergard was relying on and summaries of the deposition information he was relying on; (2) additional facts regarding plaintiffs' symptoms and treatment; and (3) additional opinions regarding causation. After the plaintiffs' counsel sent the supplemental reports to the defendant, but before the defendant filed this motion, plaintiffs' counsel and defense counsel agreed to move Dr. Ostergard's deposition to October 20-22, 2017 to give defense counsel more time to prepare.

The defendant argues that the supplemental reports are not proper supplements under Federal Rules of Civil Procedure Rule 26(e), and instead are entirely new reports that are untimely. The defendant moved to strike the reports

as untimely, and requested an emergency hearing to discuss the matter. The defendant further requested that Dr. Ostergard's deposition be held in abeyance until the court ruled on the motion.

### III. Legal Standard

The Federal Rules of Civil Procedure require that a party "disclose to the other parties the identity of any witness it may use at trial." Fed. R. Civ. P. 26(a)(2)(A). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Disclosures of expert testimony are to be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Parties who make a disclosure under Rule 26(a):

> must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1). Rule 37 of the Federal Rules of Civil Procedures provides for sanctions in the event a party fails to properly disclose or supplement a disclosure.

"Courts distinguish true supplementation (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by supplementing an expert report with a new and improved expert report." *Kanawha—Gauley Coal & Coke Co. v. Pittston Minerals*

*Group, Inc.*, No. 2:09-cv-01278, 2011 WL 320909, at *2 (S.D. W. Va. Jan. 28, 2011) (quoting *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008)). Thus, the first question is whether the plaintiffs' supplemental reports are true supplementation or gamesmanship and delay. *Id.*

If the defendant's supplemental disclosures are true supplementation then they are timely. If the reports are not true supplementation, then the plaintiff may not use the new information in the reports on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *Pittston Minerals Group, Inc.*, No. 2:09-cv-01278, 2011 WL 320909, at *2 (citing *S. States Rack and Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 695–96 (4th Cir. 2003)). "The court has 'broad discretion' to determine whether an untimely disclosure is substantially justified or harmless." *Mullins et al. v. Ethicon, Inc.*, No. 2:12-cv-02952, 2017 WL 455938, at *2 (S.D. W. Va. Feb. 2, 2017) (quoting *Gallagher*, 568 F. Supp. 2d at 631). The Fourth Circuit has held that:

> in exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure
> to disclose the evidence.

*Sherwin–Williams Co.*, 318 F.3d at 695–96; *see also Mullins*, No. 2:12-cv-02952, 2017 WL 455938, at *2 (applying the five factor analysis to determine whether a supplemental report was proper).

IV. Discussion

After reviewing the defendant's motion, the plaintiffs' response, and the defendant's reply, the court finds that an emergency hearing is unnecessary. Additionally, the court finds that holding Dr. Ostergard's deposition in abeyance is unnecessary given that the parties already stipulated to move the deposition to the end of October.

As to striking Dr. Ostergard's reports, the defendant contends that Dr. Ostergard's supplemental reports are not true supplements, but instead are "entirely new reports," that include "previously undisclosed opinions." [ECF No. 36]. Dr. Ostergard's supplemental reports include new information such as additional depositions he relied on and medical issues the plaintiffs experienced. [ECF No. 38-3]. Dr. Ostergard also draws several new, important conclusions. *Id.* For example, in Plaintiff Strubles' report he states that "more likely than not the Align SP is responsible for this device mitigation." *Id.* Similarly, in Plaintiff Knernschield's report, he concludes for the first time that:

> [a]s evidenced by the less than expected amounts of mesh excised from the mid urethra to the pubic arches bilaterally the Align SP device shrunk significantly to cause urinary obstruction with elevated post void residual

5

> urine volumes. The device itself and the chronic inflammatory reaction caused by it was more likely than not responsible for the shrinkage.

*Id.* In the same report, Dr, Ostergard goes on to further conclude for the first time that:

> [a]lthough Ms. Knernschield had urge incontinence prior to the implantation of the Align SP device, it was controlled with an anticholinergic. After implantation, the control of the urge incontinence was more difficult and incomplete. The differential diagnosis of the overactive bladder with urge, urge incontinence, frequency and nocturia includes the intense inflammatory reaction caused by the inflammatory effect of the TVT device (present), vaginal hypoestrogenism (present and treated), obesity (present), smoking (non-smoker), vaginal trauma (none diagnosed), urethrovesical infections, stones and interstitial cystitis (none diagnosed) all are ruled out as non-causative and the intense cumulative inflammatory reaction of the Align SP device is the only remaining more likely than not plausible cause.

*Id.* Dr. Ostergard added new opinions such as these in other plaintiffs' reports as well. Ultimately, while some of the content of the new reports could be regarded as true supplementation, much of the content is instead new opinions, and cannot be regarded as true supplementation.

Since the plaintiffs maintain that the new reports are merely supplements, they have not provided a reason for the reports untimeliness. Thus, the court cannot conclude that the supplemental reports are substantially justified. Nevertheless, the court finds that any portion of the reports that cannot be regarded as true supplementation are harmless under the five factors described in *Sherwin–Williams*. 318 F.3d at 695–96. As to the first two factors, the defendant was

unquestionably surprised by the supplemental reports given that they were not released until less than a week before Dr. Ostergard's deposition was scheduled, and during a time when they believed he was recovering from health complications. [ECF No. 36]. The parties, however, were able to cure the surprise by moving Dr. Ostergard's deposition to October 20-22, 2017, almost two months after the last scheduled deposition was to take place. [ECF No. 37]. Regarding the third factor, since a trial date is not yet set, the trial cannot be delayed. As to the fourth factor, Dr. Ostergard's causation opinions are very important to the plaintiffs' ability to proceed with their lawsuit. Without having Dr. Ostergard's full opinions, plaintiffs may struggle to prove causation, an essential element to their claim. Lastly, since the plaintiffs did not provide a reason for the reports untimeliness, this factor weighs against plaintiffs. Ultimately, the ability to cure the surprise, the fact that the supplemental reports do not delay the trial, and the importance of the opinions to the plaintiff's case all lead to the conclusion that the nondisclosure was harmless.

The court stresses, however, that "when handling seven MDLs, each containing thousands of individual cases, case management becomes of utmost importance." *In re: Ethicon, Inc.*, MDL No. 2327, 2017 WL 1175363, at *2 (S.D. W.V. Mar. 28, 2017). Thus, counsel is expected to "collaborate with the court in fashioning workable programmatic procedures' and cooperate with these procedures thereafter." *Id.* In the future, the court may resort to sanctions in order to ensure compliance with pretrial orders. *See id.* ("A 'willingness to resort to sanctions' in the event of noncompliance can ensure that the engine remains in tune, resulting in

better administration of the vehicle of multidistrict litigation."); *Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

V. Conclusion

The defendant's Motion for an Emergency Hearing is **DENIED**. The defendant's Motion to Strike the Untimely Reports is **DENIED**. The defendant's request that Dr. Ostergard's deposition be held in abeyance is **DENIED**. The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 15, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE